## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JENNIFER HALL,

     *Plaintiff*,

CASE NO. 15-cv-11899

DISTRICT JUDGE AVERN COHN

*v.*

MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGEMENT
### (Docs. 13, 15)

### I.      RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Hall's Motion for Summary Judgment (Doc. 13) be **DENIED** and that the Commissioner's Motion for Summary Judgment (Doc. 15) be **GRANTED**.

### II.      REPORT

#### A.      Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act 42 U.S.C. §§ 401-34 and Supplemental Security Income ("SSI"). (Doc. 4.) The matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 15.)

On March 20, 2011, Plaintiff filed the present claim for SSI and DIB, alleging that she became disabled on April 20, 2008. (Tr. 124, 252-65, 25.) Plaintiff's initial claim was denied, (Tr. 108-40, 160-67) and Plaintiff requested a hearing. (Tr. 169.) On December 13, 2012, an Administrative Law Judge ("ALJ") held a hearing, (Tr. 172-89) and subsequently issued an unfavorable decision. (Tr. 141-54.) On April 11, 2014, the Appeal Council remanded the case. (Tr. 155-59.) On September 17, 2014, Plaintiff testified before ALJ John Dodson, who ordered additional consultative examinations (Tr. 47-67) before continuing the hearing on February 25, 2015. (Tr. 28-46.) On March 6, 2016, the ALJ denied her claim. (Tr. 144-51.) The ALJ's decision became the Commissioner's final decision on, March 27, 2015, when the Appeals council denied Plaintiff's request for review. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On May 27, 2015, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Pl. Compl., Doc. 1.) Plaintiff filed a motion for summary judgment and supporting brief on October 21, 2015. (Doc. 13.) Defendant filed a cross motion for summary judgment on December 7, 2015. (Doc. 15.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

**B.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r*

*of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health and Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Id.* (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

3

Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five step analysis, the ALJ found that Plaintiff was not disabled under the Act. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2013, and had not engaged in substantial gainful activity since the alleged onset date, April 20, 2008. (Tr. 12.) At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative lumbosacral disc disease, morbid obesity, obstructive sleep apnea, borderline intellectual functioning and anxiety." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. 420) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work "except unskilled work with no production standards, only occasional contact with the public and no more than superficial contact with coworkers and/or supervisors." (Tr. 14.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 18.) At step five, the ALJ found that a significant number of jobs existed which Plaintiff could perform despite her limitations. (Tr. 19.) The ALJ also found that Plaintiff was thirty-one and therefore a younger individual (ages 18-44) as of the alleged onset date. (*Id.*) As a result, the ALJ found Plaintiff is not disabled under the Act. (Tr. 20.)

### E.    Administrative Record

#### 1.    Medical Records

With regard to physical functioning, from March 10, 2010 through January 10, 2013 Plaintiff was treated at City Medical, P.C. primarily for lower back pain, generalized joint pain, and obesity. (Tr. 391-433, 506-62.) Various illegible physicians' initials appear at the bottom of each record, thus it is unclear who treated Plaintiff. (*Id.*) It was consistently noted that

Plaintiff's spine was abnormal, positive for tenderness, positive for a guarded range of motion, and had "LE strength 5/5;" her gait and station were normal; and she was 5'6" and weighed between 330 and 339 pounds. (*See, e.g.*, Tr. 392, 394, 396, 398, 400, 402, 403, 408, 410, 412, 507, 509, 511, 513, 517, 519, 521, 525, 523, 535, 537, 543, 549, 551, 554, 556, 558, 560, 562.) In March 2010, lumbosacral X-rays revealed slight signs of osteoarthritis, moderate signs of calcinosis abdominal aorta, and moderate signs of degenerative arthritis. (Tr. 383.) Plaintiff was diagnosed with lumbar disc herniation and morbid obesity; she received chiropractic treatment and was treated with pain medication and anti-inflammatory medication. (*See, e.g.*, Tr. 381-82, 392, 394.). A laboratory workup revealed a positive rheumatoid factor, and Plaintiff was diagnosed with possible rheumatoid arthritis and treated with medication. (Tr. 406-08, 425, 435, 515-17.) In November 2011, Plaintiff reported that she walks nine blocks a day and that her pain worsens when walking. (Tr. 522.) An MRI of the lumbar spine in December 2010 revealed "moderate degenerative changes of the left sacrolliac joint. . . . At L4-L5, there is a small left paramedian to interforaminal disc herniation mildly effacing the undersurface of the exiting left L4 nerve root." (Tr. 389.) On January 17, 2011 a lumbosacral EMG "at the level of L3/4/5 and S1" was normal showing no sign of denervation and no neuropathic or myopathic unit. (Tr. 422.)

On October 8, 2011, Plaintiff underwent a consultative medical evaluation with Atul Shah, M.D. (Tr. 434-41.) Plaintiff reported a history of lower back pain, joint pain, rheumatoid arthritis, obesity, and a pinched nerve. (Tr. 434.) She reported pain, muscle spasms, and weakness in every joint; pain in her hands, legs, elbows, shoulders, knees, ankles and feet; and fatigue. (Tr. 435.) Dr. Shah noted "moderate to severe restriction of range of motion of the

lumbar spine. She is unable to bend because of lower back pain with spasms. Her gait is slow but normal." (Tr. 436.) His impression was moderate chronic lumbar degenerative joint disease, moderate chronic left lumbar radiculopathy, moderate generalized musculoskeletal pain, rheumatoid arthritis, and morbid exogenous obesity. (Tr. 436.) He concluded that Plaintiff "has moderate functional impairment of occupational activity secondary to lower back pain and generalized musculoskeletal pain with limitations for prolonged walking, standing, climbing stairs, and ladders." (*Id.*)

> On November 3, 2012, a second lumbosacral MRI revealed:
>
> [t]ransitional lumbosacral anatomy with bilateral hypertrophied L5 transverse processes articulating with the upper border of the sacrum. . . . Moderate disc degeneration at L4-L5 with a small broad-based central and left paracentral disc protrusion superimposed on a diffuse disc bulge with marginal osteophytes. Mild central stenosis[1] is present with left lateral recess narrowing. There is also moderate left and mild right neural foraminal narrowing. These findings may account for the patient's left-sided radicular symptoms. . . . Mild disc degeneration at L2-L4 with a small disc bulge with small marginal osteophytes. No significant spinal stenosis or neural foraminal narrowing at this level.

(Tr. 461-62.)

In November 2013, Plaintiff began complaining of ankle and foot pain, she was diagnosed with Achilles' tendonitis and a bilateral retrocalcaneal heel spur. (Tr. 570, 572.) Surgical removal of the heel spur was recommended and she was treated with pain and anti-inflammatory medication, rest, stretching, and heel lifts. (Tr. 571.)

On November 22, 2013, Thomas Pinson, D.O. completed a physical assessment of Plaintiff's functionality. (Tr. 567-68.) Dr. Pinson opined that Plaintiff is restricted to

---

[1] "Spinal stenosis is narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." *Spinal Stenosis*, MEDLINE PLUS, https://www.nlm.nih.gov/medlineplus/ency/article/000441.htm (last visited May 24, 2016).

lifting and carrying ten pounds. (Tr. 567.) She can stand or walk for no more than two of eight hours and sit for six of eight hours, but she must be allowed to change her position every twenty minutes if sitting and ten minutes if standing. (*Id.*) She must have the opportunity to sit at will. (*Id.*) Dr. Pinson noted that his opinion was based on her reports of bilateral heel, ankle, and knee pain and "pain from chronic injury." (*Id.*) Plaintiff can only occasionally twist, stoop, or climb stairs; she can never crouch or climb ladders; her ability to crawl, kneel, reach overhead, and push and pull is limited; and she would need to miss more than four days of work per month. (Tr. 568.) Dr. Pinson noted bilateral knee and ankle pain and morbid obesity as the reason for these limitations. (*Id.*)

The record indicates that Plaintiff continued to receive chiropractic treatment in 2014 and reported mild to moderate pain. (466-73, 573-85, 494-97.)

On October 28, 2014, Dr. Ernesto Bedia, M.D. completed a consultative medical evaluation. (Tr. 650-52.) Plaintiff reported lower back pain resulting from an injury when she was nineteen that is aggravated going up stairs, lifting, twisting and walking for half a block. (Tr. 650.) Dr. Bedia's impression was low back pain, morbid obesity, and sleep apnea. (Tr. 652.) He found that Plaintiff's "back has no paraspinal spasm or tenderness." (*Id.*) Plaintiff was able to bend down completely, had a negative straight leg raising test, she could heel, toe, and tandem walk, "[s]he carried a cane but could walk without it," and she did not need assistance getting on or off the examination table. (*Id.*) He opined that Plaintiff can occasionally lift and carry up to twenty pounds; can sit for four hours, stand for one hour, and walk for one hour without interruption; and does not require the use of a cane. (Tr. 658.) She can never climb ladders and scaffolds or operate a motor

8

vehicle, but she can occasionally climb stairs and ramps, kneel, crouch, and crawl. (Tr. 660-61.) She can care for personal hygiene, prepare meals, climb a few stairs, shop, and travel without assistance. (Tr. 662.)

On January 1, 2015, Sam Fabhadsefert, completed a two page physical assessment of Plaintiff. He opined that because of Plaintiff's morbid obesity, sleep apnea and chronic back and knee pain Plaintiff could lift and carry twenty pounds occasionally and stand/ walk four hours a day, but would need to change position every five minutes. (Tr. 686.) He also found that Plaintiff's "physical exam findings" reveal that she can occasionally perform all postural activities (twist, stoop, crouch, climb stair/ladder), and should avoid even moderate exposure to high humidity and fumes/odors, dusts, and gases. (Tr. 687.)

With regard to mental impairments, during an initial evaluation on February 27, 2013, Plaintiff reported feeling sad, sleepy, and overwhelmed; that she has "anxiety attacks due to being overweight and feeling paranoid;" that her family does not "get along that well;" that she reads the bible, does puzzles, and laundry; and that she has no previous mental health treatment. (Tr. 590-92.) The therapist noted that Plaintiff has a short attention span and is easily distracted. (Tr. 594.) She diagnosed depressive disorder, ruled out ADHD, and assessed a GAF score of 48. (Tr. 594.)

On March 28, 2013, Christine Cucchi, D.O. completed a psychiatric evaluation. Plaintiff complained of anxiety, depression, issues dealing with children, and a history of sexual trauma. (Tr. 596.) Dr. Cucchi found that Plaintiff was anxious, had a constricted affect, and normal attention/concentration. (Tr. 597.) She diagnosed moderate major depressive disorder and post-traumatic stress disorder and assessed a GAF score of 50.

9

(Tr. 598.) A follow-up treatment plan created by Plaintiff's therapist, Sally Lyons, M.A., L.P.C. indicates that Plaintiff will complete daily household chores, prepare meals before her children arrive home from school, and take medication daily. (Tr. 601-02.) Follow-up notes indicate that throughout her treatment from February 2013 through July 2014 Plaintiff continued to report issues with frustration, irritability, and feeling overwhelmed, but experienced improvement with medication. (Tr. 603-48.) Plaintiff's attention/concentration and thought process was consistently noted as "within normal limits." (Tr. 597, 604, 608, 612, 617, 621, 628, 632, 636, 645.) On November 12, 2013, Plaintiff reported that she takes her kids to school, cleans, cooks and helps her kids with homework. (Tr. 624.) On April 22, 2014, Plaintiff requested ADD medication. (Tr. 635-39.) On July 9, 2014, it was noted that "She is doing well, she met a guy and it's good." (Tr. 644.)

On May 7, 2014, Lyons assessed Plaintiff's mental functionality. She opined that due to short-term memory impairment, Plaintiff is moderately limited in her ability to understand, remember, and carry out simple instruction and make judgments on simple work-related decisions, and Plaintiff has a marked limitation in her ability to understand, remember, and carry out complex instructions and make judgments on complex work related decisions. (Tr. 491.) She also found mild limitation in Plaintiff's ability to interact appropriately with the public and moderate limitation of her ability to interact appropriately with supervision and co-workers and respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 492.) She noted that Plaintiff's "anxiety in social settings may effect work performance." (Tr. 492.)

10

Nick Boneff, Ph.D., a consultative psychologist evaluated Plaintiff on October 28, 2014. Plaintiff was alert and oriented X3, but was somewhat anxious and self-conscious. (Tr. 666.) Plaintiff reported that her mother and daughter cook, she tries to help with very light chores, she needs help dressing and getting out of the tub, she no longer drives, and she uses a cane for support. (Tr. 663.) Intelligence testing (WAIS-IV) revealed a full scale I.Q. of 77, which placed Plaintiff "in a mid to upper borderline range of intellectual function." (Tr. 667.) She was diagnosed with borderline functioning intellectual disability disorder, learning disability, and depression, managed with medication. (Tr. 668.) Dr. Boneff opined that Plaintiff has "a mild learning disability affecting primarily her vocabulary, general fund of information, and reading skills. She is capable of following 2 and 3 step verbal instructions. There is no evidence of significant cognitive impairments and her depression and anxiety appear to be relatively well-managed with medication such that she would be able to appropriately interact with others in a work environment." (*Id.*)

## 2.     Plaintiff's Function Report

On May 18, 2011, Plaintiff reported that her daily activities include resting most of the day, picking her three children up from school, cooking, and light cleaning. (Tr. 320.) She noted that her children help her out a lot and complete the hard cleaning. (Tr. 320, 322.) She reported that she has some issues with personal care, including wiping down low, brushing her hair, and shaving. (Tr. 321.) She shops once a month but the kids help her carry heavy things, she drives a car, and she can walk half a block without

11

resting. (Tr. 323, 325.) When asked to identify any assistive devices that she uses, Plaintiff did not select cane, and wrote "I grab on to everything." (Tr. 326.)

### 3.    Plaintiff's Hearing Testimony

On September 17, 2014, Plaintiff testified that she lives with her mother, her three children (ages 18, 15, 10) and a friend. (Tr. 53.) She uses a cane to go upstairs. (*Id.*) She does not do any chores, cook, or drive, needs assistance getting dressed and bathing, and relies on her kids and other relatives to complete these tasks. (Tr. 54, 56, 60.) She can walk about five feet and stand for five to ten minutes. (Tr. 55-56.) She has attempted to lose weight but has issues walking because of her tendinitis. (Tr. 62.)

On February 25, 2015, she again testified that she relies on her kids to complete chores. (Tr. 33-34 37) She testified that she injured her knee falling on gravel and it hurts when she goes up and down stairs. (Tr. 36.) She testified that her medication is no longer helping with her anxiety and she does not leave her house anymore. (Tr. 37-38.) She also testified that she does not drive because she has "really bad road rage" and issues falling asleep behind the wheel. (Tr. 40.)

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, but the only relevant distinction for present purposes is between "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to

provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2. Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *2. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her residual functional capacity. *Id.* at 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544. *See also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse*, 502 F.3d at 540-42; SSR 06-3p, 2006 WL 2329939, at *2.

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

13

404.1527(d)(2). *See also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"), and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2). *See also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec. of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273, 1995 WL 138930, at *1 (6th Cir. 1995) (unpublished table decision).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a

14

claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quotation omitted), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

15

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication .
        . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). *See also Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. Furthermore, the claimant's work history and the consistency of her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). *See also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

**G.     Analysis**

Plaintiff contends that the ALJ's s decision is not supported by substantial evidence and the he erred by (1) improperly finding that Plaintiff did not meet Listing 1.04; (2) insufficiently addressing the medical opinions of record; and (3) failing to include Plaintiff's severe impairments and non-exertional limitations in the RFC assessment. (Doc. 13.) I will address each of these arguments in turn.

### 1.    Substantial Evidence Supports the ALJ's Step Three Findings

Plaintiff contends that the ALJ never evaluated the medical evidence and made conclusory statements in determining whether Plaintiff meets or equals Listing 1.04. Specifically, Plaintiff argues that she meets the requirements of Listing 1.04 because the 2010 MRI demonstrates nerve root impingement and she uses an assistive device to walk. (Doc. 13, at 14-15.) The elements of Listing 1.04 are:

Disorders of the spine [] resulting in compromise of a nerve root [] or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

17

20 C.F.R. pt. 404, Subpt. P. App. 1, Listing 1.04. An inability to ambulate effectively "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id*. at 1.00(B)(2)(b).

Although it is Plaintiff's burden of proof at step three, the ALJ must provide sufficient articulation of his findings to permit meaningful review. *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 416 (6th Cir. 2011); *Woodall v. Colvin*, No. 5:12cv1818, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013) ("[T]he ALJ must  build an accurate and logical bridge between the evidence and his conclusion."). In the instant case, the ALJ found that the December 2010 MRI "revealed moderate degenerative changes with a small paramedian herniation at L4-L5 mildly effacing the exiting left L4 nerve root." (Tr. 13.) He also found that a later EMG revealed no signs of denervation or lumbosacral radiculopathy and a 2012 MRI revealed no significant changes. (*Id.*) Finally, although he noted chronic low back pain and morbid obesity the ALJ found that Plaintiff "consistently presented with a slow but normal gait and she does not require an assistive device to walk or stand." (*Id.*) Thus the ALJ concluded that the Plaintiff did not meet or equal Listing 1.04.

Plaintiff argues that the 2010 MRI revealed nerve impingement; however, she fails to cite any evidence contradicting the ALJ's conclusion that a mild herniation "effacing" the exiting nerve is not evidence of nerve root compression. Nor does she present any evidence to

contradict the EMG findings of no denervation or lumbosacral radiculopathy.[2] Thus I suggest that substantial evidence supports the ALJ's finding that the record lacks evidence of nerve root compression. It is not necessary to address the ALJ's finding that Plaintiff does not require an assistive device given that substantial evidences supports the ALJ's finding of no nerve root compression or lumbar spinal stenosis.

### 2.    Substantial Evidence Supports the ALJ's Assessment of the Medical Opinions

Plaintiff alleges that substantial evidence does not support the ALJ's assessment of Plaintiff's treating source opinions. First, Plaintiff argues that the ALJ erred by failing to assign controlling weight to Dr. Pinson's opinion. (Doc. 13, at 11-13.) The ALJ found that Dr. Pinson was not a treating source because there is "no indication that Dr. Pinson has seen [Plaintiff] on more than one occasion." (Tr. 16.) The record contains extensive treatment notes from City Medical, P.C., where Dr. Pinson is a treating physician; however, the various physician initials at the bottom of each visit record are illegible. (Tr. 390-433, 506-62.) Thus, it is not possible to determine whether or how frequently Dr. Pinson treated Plaintiff, and the ALJ made no effort to seek clarification during the hearing or otherwise. (Tr. 28-67.) Even if Dr. Pinson was a treating source, I suggest that any error here is harmless because the ALJ provided good reasons for not giving controlling weight to Dr. Pinson's opinion. (Tr. 17); *see* SSR 96-2p, 1996 WL 374188. The ALJ found that the record lacks supporting objective test results and clinical findings, and that Dr. Pinson referenced only subjective knee and ankle pain as

---

[2] Radiculopathy refers to "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root. *Radiculopathy*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/radiculopathy (last visited May 27, 2016.)

evidence for his opinion. (Tr. 16-17, 567.) The ALJ noted that there are no objective diagnostic studies of plaintiff's knees and that the January 2011 EMG showed no signs of lumbar radiculopathy or nerve root impingement. (Tr. 17, 422.) The ALJ also found that Dr. Pinson's opinion was inconsistent with Plaintiff's reported daily activities: taking care of her basic personal needs, caring for her children, preparing meals, and doing light household chores. (Tr. 17); *see Blaca v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990). Plaintiff objects that this finding is erroneous because Plaintiff testified that her children take care of her and she is unable to do most things because of pain. (Tr. 33-43.) However, the record is inconsistent and substantial evidence supports the ALJ's finding that Plaintiff does complete these daily activities because she reported them in her function report and similar activates are referenced throughout the record. (Tr. 320-21, 323, 325, 522, 592, 601-02.) Thus, I suggest that substantial evidence supports the weight the ALJ assigned to Dr. Pinson's opinion.

Plaintiff next argues that the ALJ "bizarrely rejects treating physician Dr. Fabhadsefert, DO, because there 'is no designation as to whether the examiner is a doctor.'" (Doc. 13, at 12.) Plaintiff maintains that "[d]ue [p]rocess would require some type of inquiry as to whether the signature was a doctor," and asserts that Dr. Fabhadsefert's opinion is entitled to deference as a treating source opinion. (*Id.*)

Contrary to Plaintiff's assertion, the ALJ did not reject Fabhadsefert's medical report but merely acknowledged that the signature was equivocal and that there is no designation as to whether Fabhadsefert is a doctor. (Tr. 18.) Regardless, Dr. Fabhadsefert's opinion is not entitled to controlling weight as there is no indication in the record that he treated Plaintiff more than once and the report indicates that his findings are based upon his "physical exam

findings." (Tr. 686.) Even if it were, any error is harmless because the RFC restrictions developed by the ALJ are more restrictive than those identified by Fabhadsefert. (Tr. 14.) Fabhadsefert opined that Plaintiff could stand or walk for four hours if allowed to change position, occasionally lift twenty pounds, and occasionally perform all postural activities. (Tr. 686-87.) However, the RFC limits Plaintiff to a sedentary position under 20 C.F.R. §§ 404.1567(b) and 416.967(b), which restricts Plaintiff to lifting ten pounds and requires only occasional walking and standing. Thus the ALJ did not reject Fabhadsefert's opinion. He incorporated his limitations into Plaintiff's RFC and implicitly resolved conflicting evidence, such as declining to adopt Fabhadsefert's limitation against even moderate exposure to respiratory pollutants given that the record showed Plaintiff "consistently presented with no signs of respiratory distress." (Tr. 13-18). *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.").

Plaintiff's argument that the ALJ should have contacted Fabhadsefert for clarification fails. New regulations became effective on March 26, 2012, rendering the decision to recontact discretionary. 20 C.F.R. § 404.1520b(c), 416.920b(c). The decision to recontact is driven by the inadequacy of the evidence in the record. *Id.* Thus, if the record contains sufficient evidence, recontacting sources is unnecessary. *See, e.g., Pierson v. Colvin*, No. 4:12-CV-2095, 2014 WL 988598, at *7 (N.D. Ala. Mar. 13, 2014) ("The record contains inconsistent information, but not insufficient information, so recontacting the Drs. Hayden and Saxon was

21

not necessary."). There is no indication that the ALJ found Fabhadsefert's findings to be unclear, nor was the evidence insufficient for the ALJ to determine whether Plaintiff is disabled. I suggest that the ALJ properly exercised his discretion not to recontact Fabhadsefert.

Plaintiff next argues that the ALJ erred by failing to assign controlling weight to Dr. Lyons's opinion and merely dismissing it because of Plaintiff's daily activities. (Tr. at 12.) Dr. Lyons opined that Plaintiff has an impaired short term memory; marked limitations in understanding, remembering, and carrying out complex instructions; moderate limitations interacting with the public, supervisors, and coworkers; moderate limitations responding to usual work situations; moderate limitations understanding, remembering, and carrying out simple instructions; and social anxiety. (Tr. 491-92.) The ALJ properly weighed Dr. Lyons's opinion and provided good reasons for not assigning it controlling weight. (Tr. 18.); *see* SSR 96-2p, 1996 WL 374188. Specifically the ALJ found that Dr. Lyons's opinion was inconsistent with the record evidence. He noted that the consultative examiner Dr. Boneff diagnosed Plaintiff with borderline intellectual functioning and depression, found that that her thought pattern was simple, logical and goal directed, and that she had an I.Q. of 77. (Tr. 18, 668.) Dr. Boneff also found that Plaintiff's anxiety and depression were well managed with medication, but that she may have mild difficulty understanding, remembering and carrying out complex instructions and mild difficulty responding appropriately to usual work situations. (Tr. 18.) The ALJ also found that Plaintiff's daily activities were inconsistent with Dr. Lyons's opinion because Plaintiff reported that she takes her children to school, prepares meals, helps her children with homework, and does household chores. Moreover, Dr. Lyons's own treatment notes do not support her opinion. It is consistently noted that Plaintiff's memory and thought

process were within normal limits (Tr. 597, 604, 608, 612, 617, 621, 628, 632, 636, 645.) and Plaintiff demonstrated steady improvement with medication. (Tr. 605, 620, 623, 627, 630, 634, 644.) Thus, I suggest that substantial evidence supports the weight the ALJ assigned to Lyons's opinion.

Finally, Plaintiff argues that the ALJ ignored objective evidence and failed to "articulate any reasoning for the decision." (Doc. 13, at 13.) Plaintiff further states that the ALJ inappropriately acted as both the "adjudicator and medical expert." (*Id.*) However, as the above discussion demonstrates the ALJ clearly considered and addressed objective test results and Plaintiff's subjective complaints throughout the decision. (Tr. 12-20.)

### 3.    Substantial Evidence Supports the ALJ's RFC determination

Plaintiff asserts that substantial evidence does not support the ALJ's RFC determination because it does not "accurately portray" Plaintiff's "severe impairments and nonexertional limitations." (Tr. 16.) Plaintiff argues that the ALJ failed to consider obesity as required by SSR 02-1p, failed to consider whether Plaintiff requires a cane and the amount of time the Plaintiff must balance in a workday, and failed to evaluate Plaintiff's ability to complete a competitive work schedule. (Doc. 13, at 15-17.)

SSR 02-1p "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (citation omitted). In this case, the ALJ expressly found that morbid obesity was a severe impairment at step two. (Tr. 12.) He also specifically indicated that obesity complicated Plaintiff's degenerative disc disease and obstructive sleep apnea at step three. (Tr. 16-17.) He

23

also addressed Plaintiff's morbid obesity in discussing his RFC assessment. (Tr. 15-18.) Thus I suggest that the ALJ complied with listing SSR 02-1p.

Substantial evidence also supports the ALJ's finding that Plaintiff does not require a cane or assistive device to walk or balance. (Tr. 13.) Treatment records cited by the ALJ support his conclusion that while Plaintiff occasionally uses a cane she is capable of ambulating without such a device. (Tr. 13.) She is described as walking slowly but maintaining a normal gait, (Tr.120-21, 135, 398, 400, 408, 410, 412, 434, 440, 656, 471) and it is noted that she is capable of walking without a cane. (Tr. 652.) Although Plaintiff testified that she uses a cane, (Tr. 53) she also specifically denied using a cane, (Tr. 326.) and described being able to walk approximately half a mile or half a block before needing rest. (Tr. 113, 434.) Thus, substantial evidence supports the ALJ's decision not to include Plaintiff's need to use a cane or balance restrictions in the RFC. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[T]he ALJ's factual findings support the conclusion that Forrest could 'ambulate effectively' for most of the relevant period. . . . The record shows that Forrest used one cane at most, often went without, and could otherwise ambulate effectively during the relevant period.") Moreover, the fact that Plaintiff was limited to sedentary work likely accounts for any balance issues that Plaintiff may have in a workday. *See Jozlin v. Comm'r of Soc. Sec.*, No. 12-cv-10999, 2013 WL 951034, at *9 (E.D. Mich. Mar. 12, 2013) ("Thus, even if the ALJ had included Plaintiff's alleged need to ambulate with a cane in her RFC, as Plaintiff indicated, the RFC would have limited her to sedentary work, and the VE testified that jobs existed in the economy for an individual with such limitations."); *Ford v. Comm'r of Soc. Sec.*, No. 13-CV-14478, 2015 WL 1119962, at *2 (E.D. Mich. Mar. 11, 2015) ("As to plaintiff's

24

claim the RFC should have noted that plaintiff needed to use a cane, it is unclear that such a limitation was not already accounted for in the determination that plaintiff was limited to 'sedentary' work.").

Plaintiff also contends that the ALJ did not "evaluate whether the claimant is capable of a competitive work schedule, i.e., 8 hour day, 40 hour work week. . . [as] required by SSR 96-8p." (Doc. 13, at 15.) SSR 96-8p simply directs an ALJ to assess an RFC in the context of what a claimant can do on a "regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1-2. There is no indication this ruling was intended to impose a formalistic requirement that an ALJ expressly state that the RFC reflects a claimant's ability to perform the specified level of activity on a regular and continuing basis. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 117-18 (6th Cir. 2010) ("The only thing arguably missing from the ALJ's decision is a specific discussion of Plaintiff's ability to sustain work in an ordinary day, but it is implicit in her opinion that this ability is only moderately affected by Plaintiff's mental impairments."); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.") An "ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado*, 30 F. App'x at 548. Here the ALJ discussed all the relevant evidence, cited supporting facts and evidence, and concluded that the evidence does not preclude Plaintiff from performing a limited range of sedentary work. (Tr. 17-23.) Thus I suggest that substantial evidence supports the ALJ's RFC assessment.

### H.   Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Hall's Motion for Summary Judgment (Doc. 13) be **DENIED**, the Commissioner's Motion (Doc. 15) be **GRANTED**, and that this case be **AFFIRMED**.

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987.) Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P.

72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 3, 2016                    S/ PATRICIA T. MORRIS
                                       Patricia T. Morris
                                       United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 3, 2016                     By s/Kristen Krawczyk
                                       Case Manager to Magistrate Judge Morris